[Cite as *State v. Hollowell*, 2019-Ohio-2644.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

State of Ohio                                            Court of Appeals No. L-18-1087

      Appellee                                    Trial Court No. CR0201702563

v.

Miekel Hollowell                                    **DECISION AND JUDGMENT**

      Appellant                                   Decided:  June 28, 2019

* * * * *

Julia R. Bates, Lucas County Prosecuting Attorney, and
Evy M. Jarrett, Assistant Prosecuting Attorney, for appellee.

Tyler Naud Jechura, for appellant.

* * * * *

**OSOWIK, J.**

{¶ 1} This is an appeal from a February 26, 2018 judgment of the Lucas County

Court of Common Pleas, denying appellant's request for a continuance at the

commencement of a jury trial.  Appellant wanted to retain private counsel in lieu of

appointed counsel.  However, the trial court had previously granted appellant

continuances for purposes of retaining private counsel and appellant failed to do so. For the reasons set forth below, this court affirms the judgment of the trial court.

{¶ 2} Appellant, Miekel Hollowell, sets forth the following two assignments of error:

> 1. The trial court erred by not properly informing [appellant] of his right to counsel or the consequen[c]es of proceeding pro se, nor was there a proper acknowledgment of understanding by [appellant].

> 2. The trial court erred when it denied [appellant's] right [to counsel].

{¶ 3} The following undisputed facts are relevant to this appeal. On July 27, 2017, a Toledo police officer on patrol in West Toledo observed appellant unlawfully operating a motor vehicle without a license plate. Upon initiating a traffic stop, the officer detected the odor of marijuana emanating from appellant's vehicle.

{¶ 4} In the course of the traffic stop, appellant was uniformly uncooperative. Appellant first refused to roll down the window of his vehicle when directed to do so by the officer. Appellant then refused to provide any identification to the officer, turn off his vehicle, or exit the vehicle. Appellant responded to each of the officer's basic, routine questions by replying with a rebuttal question.

{¶ 5} Ultimately, appellant proclaimed to the officer that appellant was a member of the "Tar Tar" tribe of the "Moorish Nation." As such, appellant denied the legal authority of any American governmental entity, law enforcement agency, or domestic laws. The officer called for backup.

2.

**{¶ 6}** Upon arrival of the backup officers, appellant fled the scene, driving his vehicle down a pedestrian sidewalk. Appellant led the officers on a high-speed chase during rush hour, running red lights, nearly striking a pedestrian, and ultimately driving to police headquarters downtown. These events were recorded by the police vehicle's dashcam, as well as the officer's bodycam.

**{¶ 7}** On September 8, 2017, appellant was indicted on one count of failure to comply with an order or signal of a police officer, in violation of R.C. 2921.331(B), a felony of the third degree.

**{¶ 8}** On September 18, 2017, the first arraignment in this matter was conducted. Appellant filed a pro se affidavit proclaiming that, "I Jack Rabbit Bey am exercising my right to wear the respective headdress of my religion." Appellant subsequently filed several additional affidavits proclaiming his self-identification as a "Moorish American." These events necessitated multiple continuances.

**{¶ 9}** On September 26, 2017, appellant's second arraignment hearing was conducted. The trial court urged appellant to obtain, "[A]n attorney who is licensed in the State of Ohio to represent you." Appellant refused the trial court recommendation and proclaimed that, "[M]y religion doesn't do attorneys." Faced with these circumstances, the trial court appointed counsel for appellant.

**{¶ 10}** On October 17, 2017, despite the appointment of advisory counsel and appellant's own proclamation that he doesn't "do attorneys," appellant appeared at the third arraignment hearing with "Sheik Christopher Gray-El". The trial court noted that the individual appearing with appellant was not a licensed attorney.

3.

{¶ 11} The trial court next cautioned appellant that if he proceeded on a pro se basis, he would be held to the same legal standards as a properly licensed attorney. In addition, the trial court again methodically conveyed to appellant all available options, including appointed counsel, advisory counsel, and pro se representation.

{¶ 12} Upon appellant's refusal to enter any plea on his own behalf, the trial court entered a not guilty plea on appellant's behalf. On October 31, 2017, at a pretrial hearing, appellant filed a motion purportedly citing cases from the, "Moorish Science Temple of America Divine Constitution." The trial court scheduled the case for a January 8, 2018 jury trial.

{¶ 13} On January 8, 2018, appellant appeared before the trial court and requested another continuance. The matter was then continued until February 26, 2018. On February 5, 2018, prior to the trial date continued at appellant's request, appellant filed a pro se "Notice of Default Judgment." On February 15, 2018, appellant filed a second such purported default notice in the pending criminal case.

{¶ 14} On February 26, 2018, the trial court notified appellant that counsel would represent appellant at trial given appellant's statement directly to the trial court at that time that appellant found himself to be, "[N]ot competent to represent myself."

{¶ 15} Despite appellant's own proclamation that he was not competent for pro se representation purposes, and the furnishing of appointed counsel for trial, the following day appellant filed another pro se document proclaiming that, in relevant part, "This cause has come before The Grand Sheik and Chairman of The Moorish Science Temple

4.

of America* * * Grand Sheik has reviewed the charge and has found [appellant] in compliance * * *This verdict has to be not guilty."

{¶ 16} During trial, due to appellant's persistent outbursts, interruptions, and proclamations, the trial court called a recess in order to have appellant placed in a separate, adjacent space in which appellant could observe and hear the trial while simultaneously being unable to continue disrupting the proceedings.

{¶ 17} At trial, the police officer who initially encountered appellant testified to the court that on the afternoon of July 27, 2017, the officer initiated a traffic stop of appellant due to appellant's motor vehicle not displaying a license plate.

{¶ 18} The officer next described the events in which appellant subsequently refused any and all cooperation. Appellant refused to put his window down, provide identification, turn off the vehicle, step out of the vehicle, or answer basic questions.

{¶ 19} The officer then testified that when appellant fled the scene upon arrival of the backup officers, a pedestrian had to abruptly pull her child out of the path of appellant's oncoming vehicle as he fled by driving his car down a sidewalk. The officer also testified that during the rush hour pursuit of appellant's vehicle, appellant exceeded the speed limit and ran red lights.

{¶ 20} In addition, several of back-up officers testified regarding their past experiences with persons such as appellant who proclaim to be "sovereign" citizens such that they unilaterally deny being subject to any government laws, agencies, or representatives.

5.

{¶ 21} On appellant's behalf, testimony was provided by the "Grand Sheik" of appellant's temple. This witness testified that the temple requires its members to possess valid license plates and to maintain employment. The record reflects that appellant did not conform to either of these dictates, but was nevertheless not disciplined by the temple.

{¶ 22} In addition, appellant's mother testified that she belongs to the same temple and that she advised her son on the day of the incident to meet her at police headquarters.

{¶ 23} At the conclusion of the jury trial, appellant was found guilty of the offense. Appellant was sentenced to a three-year term of community control and a three-year license suspension with privileges. This appeal ensued.

{¶ 24} In the first assignment of error, appellant asserts that the trial court erred in connection to advising appellant of his right to legal counsel. We do not concur.

{¶ 25} In contrast to appellant's assertion that the trial court somehow failed in connection to advising appellant of the right to counsel, the record reflects that the trial court repeatedly went to great lengths, on numerous occasions, to urge appellant to either obtain licensed private counsel or accept and utilize appointed counsel.

{¶ 26} The record reflects that appellant persistently refuted all efforts of the trial court. Nevertheless, the trial court did furnish legal counsel to represent appellant at trial.

{¶ 27} The record unambiguously reflects that any assertions that the trial court somehow failed in its legal obligation to appellant with respect to advising appellant of the rights and options in connection to legal counsel are wholly without merit. On the

6.

contrary, the trial court went to great lengths in connection to the provision of legal counsel. We find appellant's first assignment of error not well-taken.

{¶ 28} In appellant's second, related assignment of error, appellant contends that his constitutional rights were violated when he requested at the outset of the jury trial that he be granted another continuance to retain private counsel, in lieu of the appointed counsel furnished by the trial court. We do not concur.

{¶ 29} We first note that the record reflects that appellant was granted numerous continuances throughout this case in which to obtain private legal counsel. Appellant repeatedly failed to do so.

{¶ 30} This court has consistently held that in determining the right of an appellant to be granted another opportunity to seek, "[N]ew counsel on the eve of the trial," we must ultimately determine whether, "[T]he totality of the circumstances indicates that the delay would be unreasonable." *State v. Hart*, 6th Dist. Lucas No. L-03-1073, 2004-Ohio-5511, ¶ 16.

{¶ 31} In conjunction with the above, we note that establishing an abuse of discretion by the trial court requires showing more than a mere error of law or judgment. It must be demonstrated that the disputed trial court action was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 450 N.E.2d 1140 (1983).

{¶ 32} As applied to the instant case, the record clearly reflects that appellant had been furnished multiple opportunities in which to obtain private counsel. Appellant failed to do so. The record reflects that faced with these circumstances, the trial court furnished appellant with appointed counsel for appellant at trial.

7.

**{¶ 33}** The record reflects that the trial court's determination that under the circumstances of this case, it was not warranted to grant another continuance, was not unreasonable, arbitrary, or unconscionable.  Wherefore, we find appellant's second assignment of error not well-taken.

**{¶ 34}** On consideration whereof, we find that substantial justice has been done in this matter.  The judgment of the Lucas County Court of Common Pleas is hereby affirmed.  Appellant is ordered to pay the costs of this matter pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27.
*See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.        _____

                                                  JUDGE

Arlene Singer, J.       

                                         _____

Thomas J. Osowik, J.                                JUDGE
CONCUR.

                                         _____

                                                  JUDGE

This decision is subject to further editing by the Supreme Court of
Ohio's Reporter of Decisions.  Parties interested in viewing the final reported
version are advised to visit the Ohio Supreme Court's web site at:
http://www.supremecourt.ohio.gov/ROD/docs/.